## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**GARY BLUM ET AL**                          **CASE NO.  6:23-CV-01748**

**VERSUS**                                   **JUDGE ROBERT R. SUMMERHAYS**

**A T & T CORP ET AL**                       **MAGISTRATE JUDGE DAVID J. AYO**

## REPORT AND RECOMMENDATION

Now before this Court is a MOTION FOR REMAND filed by plaintiffs Gary Blum and Lucia Billiot (collectively "Plaintiffs"). (Rec. Doc. 74). Defendants AT&T Corp., AT&T, Inc., BellSouth Communications, LLC d/b/a AT&T Louisiana (collectively "AT&T"), Verizon Communications, Inc. ("Verizon"), CenturyLink Communications, LLC, and Lumen Technologies, Inc. (collectively "Lumen defendants") oppose remand. (Rec. Doc. 92). The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636. Considering the evidence, the law, and the parties' arguments, and for the reasons explained below, this Court recommends that Plaintiffs' motion be DENIED.

## Factual Background

In July of 2023, the WALL STREET JOURNAL published a series of articles identifying networks of lead-sheathed telecommunications cables buried underground, submerged in water, and hanging overhead in locations throughout the United States. These articles reported soil and water sample findings of elevated lead alleged to be the result of the gradual degradation of the cables and leaching of lead into surrounding land and water. Pulliam, *America is Wrapped in Miles of Toxic Lead Cables*, WALL STREET JOURNAL, July 9, 2023. Plaintiffs are property owners in the State of Louisiana asserting tort claims against Defendants arising from the presence of these cables on their property. (Rec. Doc. 1-2 at ¶

2).  Plaintiffs filed suit in the Sixteenth Judicial District Court for the Parish of St. Mary, Louisiana on behalf of themselves and others similarly situated on November 6, 2023.  (Rec. Doc. 1 at ¶ 1).  Plaintiffs' original Complaint proposed a class defined as

> [a]ll natural and juridical persons (excluding any state agencies or commissions, and excluding the U.S. federal government and any agencies or departments thereof) who own immovable property in Louisiana that has been damaged by Defendants' lead-covered telephone cables and associated lead equipment.

(Rec. Doc. 1-2 at ¶ 2).  The original Complaint named AT&T, Verizon, and Lumen as defendants.  (*Id.* at pp. 2–3).

Defendants removed the suit on December 12, 2023 citing the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and the federal officer removal statute, 28 U.S.C. § 1442(a).  (Rec. Doc. 1, generally).  On March 1, 2024, AT&T and Verizon filed a Supplement to Notice of Removal, alleging that a declaration by Jay Besch, Senior Manager in Engineering & Planning Systems Support at Lumen Technologies, Inc. ("Besch Declaration") contained information indicating that the Court also possesses diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Rec. Doc. 43 at p. 2).  Specifically, the Besch Declaration attests that "Lumen sold the entirety of its Louisiana facilities-based incumbent local exchange carrier (ILEC) business to Connect Holding, LLC" such that "Lumen no longer owns or operates any local telecommunication network cables within Louisiana."  (*Id.*, quoting Besch Declaration at Rec. Doc. 43-1).  Based on the information contained in the Besch Declaration, AT&T and Verizon alleged improper joinder of Lumen and urged the Court to disregard the Lumen defendants' Louisiana citizenship.  (Rec. Doc. 43 at pp. 3–6).

Plaintiffs filed the instant motion seeking remand following a period of jurisdictional discovery.  (Rec. Doc. 74).  Plaintiffs' motion has been fully briefed and is now properly before this Court for review.  The parties' arguments are addressed in turn.

## **Applicable Standards**

Removal of civil actions to federal district courts is governed by 28 U.S.C. § 1441, which permits removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When challenged by a motion to remand, the court must examine the basis for removal jurisdiction as of the time the complaint was filed. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). In observance of the limited jurisdiction of federal district courts, the removal statute must be strictly construed, resolving any ambiguities in favor of remand. *Manguno*, *supra* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

Removal begins with the filing of a notice containing, *inter alia*, "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The notice must be filed (1) within thirty days after the defendant receives, through service or otherwise, a copy of the initial pleading setting forth the claim for relief, or the summons, whichever is shorter; or (2) if the case "stated by the initial pleading is not removable," within thirty days after defendant's receipt, "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1) and (3).

A removing party may amend a notice of removal at any time within the thirty-day period established by § 1446(b) as a matter of right. *D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146 (5th Cir. 1979); *Mayers v. Connell*, 651 F. Supp. 273 (M.D. La. 1983). After the thirty-day window closes, a removing party may amend a notice of removal where the contemplated amendment cures a technical defect in a jurisdictional allegation

under 28 U.S.C. § 1653. The Fifth Circuit interprets § 1653 as permitting only technical corrections to jurisdictional bases already alleged in the original notice and excluding amendments that would offer new jurisdictional bases that did not exist at the time of the filing of the original notice of removal. *Whitmire v. Victus, Ltd.*, 212 F.3d 885, 887–88 (5th Cir. 2000); *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 761–62 (5th Cir. 2000); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir. 1996).

Where amendment to a notice of removal outside of the initial 30-day window is sought on the basis of the receipt of "other paper" under Section 1446(b)(3), the Fifth Circuit generally applies the rule that "'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction." *Addo*, 230 F.3d at 762 (quoting *S.W.S. Erectors, Inc.*, 72 F.3d at 494). "Courts have long recognized an exception to the voluntary-involuntary rule where a claim against a nondiverse…defendant is dismissed on account of fraudulent joinder." *Crockett v. J.R. Reynolds Tobacco, Inc.*, 436 F.3d 529, 532 (5th Cir. 2006).

"Fraudulent joinder," also referred to as "improper joinder," may be proven by demonstrating "actual fraud in the pleading of jurisdictional facts, or…[the] inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016) (quoting *Mumphrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013)). Where improper joinder is not premised upon actual fraud, courts must determine whether the defendant has

> demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

4

*Davidson*, *supra*, (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). If the court finds that no viable cause of action is stated as against the non-diverse defendant, that party's citizenship may be disregarded for diversity jurisdiction purposes. *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021) (citing *Smallwood*, *supra*)).

<u>Analysis</u>

## I.     *Defendants' Supplemental Notice of Removal*

Plaintiffs' suit was filed in the 16th Judicial District Court for the Parish of St. Mary, Louisiana on November 6, 2023. (Rec. Doc. 1-2). Defendants allege that they were served with the suit on November 13, 2023. (Rec. Doc. 1 at p. 1). Defendants' Notice of Removal was filed on December 12, 2023. (*Id.*). Accordingly, Defendants' original Notice of Removal was timely, since it was filed within the 30-day period following service pursuant to 28 U.S.C. § 1446(b)(1).

Defendants' Supplemental Notice of Removal was filed on March 1, 2024. (Rec. Doc. 42). Accordingly, the supplemental filing is untimely under Section 1446(b)(1), having been filed more than 90 days after the service of summons under that provision. Defendants' supplement, in which it seeks to assert the improper joinder of Lumen and diversity jurisdiction among the remaining parties, offers the Besch Declaration in support of these new jurisdictional bases. (Rec. Doc. 43-1). Asserting entirely new grounds for removal, Defendants' Supplemental Notice of Amendment is not offered for the purpose of curing a technical defect, such as would bring it within the ambit of Section 1653.

As explained above, the Besch Declaration includes the following:

- By agreement dated August 3, 2021, Lumen sold the entirety of its Louisiana facilities-based incumbent local exchange carrier (ILEC) business to Connect Holdings LLC. (*Id.* at ¶ 3).
- The only remaining network cables that Lumen owns or operates in Louisiana are part of its national network and

were constructed with optical glass fiber decades after lead sheathed cables were no longer used.  (*Id.* at ¶ 7).

- Following the filing of the complaint in this action, Lumen analyzed its legacy network cable data and information for purposes of identifying locations of potential lead-sheathed cables from its former local network that may at one time have been present in Louisiana, including cables that had been removed or replaced, as well as cables that might remain in situ but are not in use.  (*Id.* at ¶ 8).

- Lumen performed multiple queries…to determine whether any of the current or historical cables in Louisiana contain lead sheathing.  (*Id.* at ¶ 13).

- This analysis of the Legacy Cable Data showed that, of all the local network cables previously owned or operated by the Lumen in Louisiana, there was only one 24-foot cable located in Henderson, Louisiana that was marked as potentially being lead-sheathed.  (*Id.* at ¶ 17).

- On December 18, 2023, a Brightspeed engineer conducted an onsite inspection of this cable in Henderson.  According to the engineer, the inspection revealed that there was in fact no lead-sheathed cable at that location.  The cable in that location was originally placed in 1990, did not contain lead-sheathing at any point, and was ultimately removed in 2023.  (*Id.* at ¶ 18).

Based on these statements, Defendants allege that Lumen was improperly joined because Plaintiffs have no reasonable possibility of establishing a viable claim against Lumen under Louisiana law.  Accordingly, Defendants ask the Court to disregard Lumen's Louisiana citizenship for purposes of determining diversity jurisdiction.  (Rec. Doc. 43 at pp. 4–6).

Plaintiffs' motion argues that this Court should not consider Defendants' newly-offered bases for removal—improper joinder of Lumen and resulting diversity jurisdiction—because Defendants' Supplemental Notice of Removal was untimely under Sections 1446(b)(1) and (3), as well as Section 1653.  Defendants do not assert timeliness under Sections 1446(b)(1) or 1563, narrowing this Court's focus to the validity of the filing under Section 1446(b)(3).

Pursuant to Section 1446(b)(3), "a notice of removal may be filed within 30 days after receipt by the defendant…of a copy of an amended pleading, motion, order or other paper

from which it may first be ascertained that the case is one which is or has become removable." The undersigned finds that the Besch Declaration does not constitute "other paper" as that term is interpreted by the Fifth Circuit. Declarant Jay Besch is an employee of defendant Lumen. The declaration states that Lumen's own research efforts culminated in a December 18, 2023 inspection of what it believed was the only possible lead-sheathed cable upon which Plaintiffs' claims against it in this case might possibly be premised. Thus, the Besch Declaration is not a "voluntary act" of Plaintiffs, such as is required for removal under § 1446(b)(3). *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019) (quoting *Crockett v. R.J. Reynolds, Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006)). Although the "voluntary-involuntary rule" does not apply where a defendant is improperly joined, statutory timeliness requirements remain applicable. *Travis v. Irby*, 326 F.3d 644, 646 at n. 2 (5th Cir. 2003) (observing that the Court's finding of no improper joinder pretermitted analysis of the issue of timeliness, also raised in plaintiff's motion for remand). Given the impact of improper joinder on the timeliness of Defendants' supplemental notice of removal, the Court addresses that issue before reaching a finding on timeliness.

## II.    *Improper Joinder*

When presented with the issue of improper joinder, courts examine the allegations of the complaint to determine whether the complaint alleges facts which would preserve a plaintiff's claims against a Rule 12(b)(6) challenge. The party asserting improper joinder bears a heavy burden, as courts will construe "'all unchallenged factual allegations, including those in the complaint, in the light most favorable to plaintiff' and resolve '[a]ny contested issues of fact and any ambiguities of state law' in the plaintiff's favor.'" *Davidson*, *supra*, (quoting *Mumfrey*, 719 F.3d at 401) (quoting *Smallwood*, 385 F.3d at 573)). Courts may pierce the pleadings and conduct a summary inquiry when the complaint misstates or omits "discrete facts" upon which joinder may be found proper or improper. *Id.* "In other words, 'if

7

a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.'" *Wilson v. Kemper Corp. Servs., Inc.*, 134 F.4th 339, 344 (5th Cir. 2025) (quoting *Smallwood*, 385 F.3d at 573)).   The practical procedure employed in such cases lies within the trial court's discretion.  *Davidson*, *supra*.

### A.    Amended Complaint

As an initial matter, the parties disagree about whether the Court must limit its review of Plaintiffs' claims to those within the original Complaint or may properly consider Plaintiffs' Amended Complaint.   Plaintiffs cite Ninth Circuit jurisprudence for their argument that, because their Amended Complaint did not change the parties to the suit or the claims asserted against any Defendant, the Court can consider it when determining applicability of the local controversy exception.  (Rec. Doc. 74-1 at pp. 15–17).  Defendants point out that Fifth Circuit jurisprudence does not permit consideration of an amended complaint, strictly limiting courts to the pleadings at the time of removal.  (Rec. Doc. 92 at pp. 7–8).

Defendants correctly identify the governing authority in this circuit, which this Court is bound to apply.

> "The 'application of the local controversy exception depends on the pleadings at the time the class action is removed.' Congress intended to confer broad federal jurisdiction through CAFA, and so [a]llowing [a plaintiff] to avoid federal jurisdiction through a post-removal amendment would' conflict with the policy underlying CAFA."

*Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 341 (5th Cir. 2016) (quoting *Cedar Lodge Plantation, LLC v. CSHV Fairway View I, LLC*, 768 F.3d 425, 426 (5th Cir. 2014)).   A recent Fifth Circuit opinion supplements this maxim, however, permitting consideration of an amended pleading that does not "'present new causes of action or theories not raised in…state court.'"  Thus, amended pleadings may be "considered to the

extent they 'clarify or amplify the claims actually alleged' in the removed pleading." *Palmquist v. Hain Celestial Grp., Inc.*, 103 F.4th 294, 303 (5th Cir. 2024) (quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) (citing *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)).

Defendants offer no analysis of Plaintiffs' amended pleading under *Palmquist*. Plaintiffs assert, and this Court's review of the original and amended pleadings confirms, that Plaintiffs' amendment does not assert new causes of action or add new parties. (*See*, Rec. Docs. 1-2, 73). Review of these pleadings indicates that the additional content is narrative in nature, adding detail and emphasis. Accordingly, this Court will consider Plaintiffs' Amended Complaint in its analysis. (Rec. Doc. 73).

### B. *Besch declarations*

Turning now to the specific claims against the Lumen defendants, Defendants argue that the Besch Declaration demonstrates that the Lumen defendants cannot be liable under Louisiana law for Plaintiffs' claims based on the installation, use, and failure to remove lead-sheathed telecommunications cables in Louisiana. Specifically, Defendants assert that the search for lead-sheathed cables conducted by Lumen and referenced in the Besch Declaration included "predecessor[s] and affiliated companies," and ultimately found that the Lumen defendants never owned any lead-sheathed cable in Louisiana. (Rec. Doc. 92 at p. 24). Defendants' opposition brief also offers a Supplemental Besch Declaration, in which Besch further declares that the searches referenced in the original declaration were of two databases, Lumen's Network Design System and Operational Data Store, and were searched for the alphanumeric code "l," denoting lead-sheathed cables, and returned no positive match results. (*Id.*, citing Supplemental Besch Declaration at Rec. Doc. 100-2). Similarly, the supplemental declaration states that "'xx,' 'xxx,' and 'xxxx' indicators do not provide positive confirmation of lead in the databases that were searched." (Rec. Doc. 100-2 at p. 2). Based

on these alleged facts, Defendants assert that Plaintiffs' argument that the original Besch Declaration fails to negate the possibility of lead equipment, other than cables, in the Lumen defendants' current or former inventory, is foreclosed.  Taken together, Defendants claim that the Besch's declarations establish that none of the claims asserted by Plaintiffs are viable as to the Lumen defendants.  (Rec. Doc. 92 at pp. 17–18).

Plaintiffs argue that the Besch declarations are self-serving and inadequate to satisfy the heavy burden Defendants bear as the party alleging improper joinder.  (Rec. Doc. 74-1 at pp. 9–15).  Plaintiffs further claim that the Besch declarations are contradicted by Lumen's August 1, 2023 quarterly earnings call, during which Chris Stansbury, Lumen's then and current Chief Executive Officer, stated that "we currently estimate that less than 5% of our approximately 700,000 mile copper network contained lead, of which we believe the majority is buried in conduit-based infrastructure."  (Rec. Doc. 74-1 at p. 12–14, citing Amended Complaint at ¶ 46).  Plaintiffs also point out that Stansbury's comments during that earnings call, responding to the WALL STREET JOURNAL article, explained that Lumen "spent a lot of time just determining how much lead is in the system," indicating that the searches referenced in the Besch declarations may not have been adequate. (*Id.* at p. 13).  Finally, Plaintiffs point out that the Lumen defendants have been unwilling to engage in any discovery on this issue and have refused to make Besch available for deposition, making further investigation of the presence of lead in the Lumen defendants' cable networks impossible. (Rec. Doc. 105, at pp. 11–12).

In response, Defendants argue that, even if self-serving, the statements contained in the Besch declarations are uncontroverted, such that dismissal is appropriate.  (Rec. Doc. 92 at pp. 15–16).  Defendants also add that, during nine months of jurisdictional discovery, Plaintiffs adduced no evidence contradicting the Besch declarations.  (*Id.* at p. 15).  Similarly, Defendants allege that Plaintiffs received the February 2, 2024 Besch Declaration in "early

10

February of 2024," yet Plaintiffs waited until October of 2024 to notice Besch's deposition "with a facially deficient notice." (*Id.*).

As a function of the Rule 12(b)(6)-focused analysis required to determine improper joinder, the Court's focus is the complaint. *Arias v. Zachry LLC*, 532 F. Supp. 3d 473, 476 (S.D. Tex. 2021) (quoting *Mumfrey*, 719 F.3d at 401)). "But where it appears 'a complaint states a claim that satisfies 12(b)(6), but has misstated or omitted discrete facts that would determine the propriety of joinder,' courts have discretion to 'pierce the pleadings and conduct a summary inquiry.'" *Id.* (quoting *Smallwood*, 385 F.3d at 573). Such facts "must be both simple to prove and sufficient to fully resolve the question of potential liability." *Id.* (citing *Smallwood*, 385 F.3d at 574 at n. 12) (citing *Travis*, 326 F.3d at 648–49).

Defendants correctly observe that the ownership of lead-sheathed cables and telecommunications equipment is essential to Plaintiffs' theory of recovery against the Lumen defendants. This Court agrees that this ownership question is the sort of binary, "yes or no" inquiry contemplated by Fifth Circuit jurisprudence. As explained above, Defendants offer the original and supplemental Besch declarations, both of which conclude that the Lumen defendants do not and have not previously owned any lead-sheathed cables or lead splices. (Rec. Doc. 100-2). Besch further declares that aside from lead-sheathed cable and associated lead splices, "there is no other use for lead in…telecommunications equipment." (*Id.* at ¶ 11).

Plaintiffs deny that the Besch declarations are "undisputed" or "conclusive" on the issues relevant to improper joinder. (Rec. Doc. 105 at pp. 11–12). Citing the heavy burden allocated to Defendants as the parties alleging improper joinder, Plaintiffs conclude that the Besch declarations are insufficient to foreclose liability as to the Lumen defendants. (*Id.*).

11

In *Cuevas v. BAC Home Loans Servicing, LP*, cited by Defendants, the Fifth Circuit considered whether a district court erred in determining that the defendants had failed to demonstrate improper joinder as to a non-diverse defendant. 648 F.3d 242 (5th Cir. 2011). The trial court pierced the pleadings to consider evidence of the existence of the non-diverse party at the time of the events at issue and whether that party serviced or originated the loans at issue in the case. The Fifth Circuit found that an affidavit based on the affiant's personal knowledge and review of business records averring that the non-diverse party did not originate Plaintiffs' loan, nor did it service such loan, was "undisputed" because Plaintiffs "failed to produce any evidence disputing [the affidavit] or supporting their own allegations." *Id.* at 250.

This Court finds *Cuevas* relevant to the issue before it. Here, Defendants present the original and supplemental Besch declarations, which declare that, upon personal knowledge and analysis of data, the Lumen defendants do not and have not owned lead-sheathed telecommunications cables or splices in Louisiana, which equipment constitutes the only known bases of potential liability as to Plaintiffs' claims under Louisiana law. (Rec. Docs. 42-1, 100-2). The record in this case establishes that the parties were afforded a period of jurisdictional discovery beginning on or about December 27, 2023, with the Court's order establishing a January 9, 2024 deadline for Plaintiffs to serve jurisdictional discovery and a February 9, 2024 deadline for Defendants to serve written responses and objections to Plaintiffs' jurisdictional discovery. (Rec. Doc. 32). The original Besch declaration was signed on February 2, 2024 and received by Plaintiffs on or about February 5, 2024. (Rec. Doc. 100-1 at ¶ 3). Lumen served its responses to Plaintiffs' jurisdictional discovery on February 9, 2024. (*Id.* at ¶ 5). On or about October 21, 2024, Plaintiffs' counsel notified Lumen of its desire to depose Besch and to seek a Rule 30(b)(6) deposition of Lumen, to which Lumen responded with certain objections. (*Id.* at ¶¶ 7–15). Defendants assert that, following a meet

12

and confer conducted with Plaintiffs' counsel, they expressed willingness to provide dates on which Besch could be deposed in his individual and Rule 30(b)(6) capacities, but due to "the holidays, other conflicts, and how long jurisdictional discovery has been open," Defendants would not be able to produce Besch before Plaintiffs' operative December 6, 2024 deadline to file any desired motion to remand. (*Id.* at ¶ 18; Rec. Doc. 61). An affidavit by Megan R. Nishikawa, counsel for Defendants, asserts that no further communication from Plaintiffs' counsel was received regarding the scheduling of Besch's individual or Rule 30(b)(6) depositions. (*Id.* at ¶ 19).

In their joint Motion to Extend Deadlines filed on August 5, 2024, the parties sought substantial flexibility in expanding the timeframe for jurisdictional discovery to allow for additional time if Defendants were to produce more documents or if "unresolved issues related to jurisdictional discovery" remained pending before the Court as of November 6, 2024. (Rec. Doc. 58 at ¶¶ 14–15). By Order issued August 7, 2024, the Court declined to permit fluid deadlines as requested, but did extend the deadlines for the filing of Plaintiffs' motion to remand and for associated briefing. (Rec. Doc. 61). Considering the facts asserted in Nishikawa's affidavit, it appears that the issue of Besch's deposition arose after the issuance of the Court's August 7, 2024 order. The record shows that Plaintiffs filed no motion to compel the Besch deposition in the months leading up to the filing of the instant motion.

Plaintiffs' December 6, 2024 reply memorandum vaguely argues that a finding of improper joinder based on the Besch declarations would be inappropriate without permitting discovery on this issue. (Rec. Doc. 105 at p. 12). Considering the jurisdictional discovery already granted, as well as Plaintiffs' failure to assert the necessity of discovery based on the Besch declarations on the record prior to the filing of their Motion to Remand, this Court finds, as did the Fifth Circuit in *Cuevas*, that Plaintiffs have failed to produce any evidence casting doubt upon the Besch declarations' factual assertions or that affirmatively

13

demonstrates the continued possibility of recovery against the Lumen defendants on any claim arising from those parties' current or former ownership of lead-sheathed telecommunications cables or splices. To the extent that Plaintiffs point to the statements of Lumen's C.E.O. Chris Stansbury during the 2023 quarterly earnings call as evidence that the question of whether the Lumen defendants owned any lead-sheathed cables or equipment upon which a finding liability might be based cannot be answered by a process as simple as that explained in the Besch declarations, this Court finds that argument unavailing. Taking the alleged Stansbury statements as true, an admission that Lumen owns or did own 35,000 miles of lead-sheathed cable does not establish that any of that cable is or was located in Louisiana.

Considering the foregoing analysis, this Court will recommend that the Louisiana citizenship of defendants Lumen Technologies, Inc. and CenturyLink Communications, LLC be disregarded based on a finding of improper joinder. Accordingly, this Court will further recommend that the Court acknowledge jurisdiction over this case based on diversity pursuant to 28 U.S.C. § 1332. Although Plaintiffs' motion may be denied on the basis of these recommended findings, the undersigned offers analysis on the remaining issues raised by the instant motion out of an abundance of caution.

## II.    *Class Action Fairness Act*

In their original Notice of Removal, Defendants invoked the Court's subject matter jurisdiction under CAFA, which provides that federal district courts possess original jurisdiction over civil actions where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which…any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Federal jurisdiction under CAFA is subject to certain exceptions based on abstention principles. *Cheapside Minerals, Ltd. v. Devon Energy Prod. Co., L.P.*, 94 F.4th 492,

496 (5th Cir. 2024) (citing *Watson v. City of Allen*, 821 F.3d 634, 639 (5th Cir. 2016); *accord Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (per curiam)). Relevant here, CAFA's local controversy exception "mandates remand for class actions of a sufficiently in-state character." *Dixon v. D.R. Horton, Inc. – Gulf Coast*, 2024 WL 125730 at *2 (5th Cir. 2024) (citing 28 U.S.C. § 1332(d)(4)). Section 1332(d)(4)(A) provides, in pertinent part, that

> (4)     [a] district court shall decline to exercise jurisdiction…
>
> (A)(i)   over a class action in which
>
>> (I)  greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II)   at least 1 defendant is a defendant –
>>
>>> (aa)  from whom significant relief is sought by members of the plaintiff class;
>>> (bb)  whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>> (cc)  who is a citizen of the State in which the action was originally filed; and
>>
>> (III)   principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A).

The instant alleges that this putative class action falls within the local controversy exception, warranting remand.  (Rec. Doc. 74-1 at pp. 23–26).

## A.    *Plaintiffs' citizenship*

15

Plaintiffs' Amended Complaint identifies named plaintiffs Gary Blum and Lucia Billiot as "Louisiana citizens who own properties affected by the Defendants' conduct in Louisiana." (Rec. Doc. 73 at ¶ 1). The proposed plaintiff-class is defined as

> All natural and juridical persons (excluding any state agencies or commissions, and excluding the U.S. federal government and any agencies or departments thereof) who own immovable property in Louisiana that has been damaged by Defendants' lead-covered telephone cables and associated lead equipment.

(*Id.* at ¶ 2). Defendants argue that because the putative class is not defined by the state citizenship of its members, Plaintiffs are required to demonstrate that the putative class meets the citizenship criterion of Section 1332(d)(4)(A)(i)(I) by a preponderance of the evidence. (Rec. Doc. 92 at p. 13) (citing *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 814 (5th Cir. 2007)). Defendants offer the following data points as weighing against a presumption that property ownership within the State of Louisiana equates Louisiana citizenship:

> (1)   8.4 percent (nearly 1.7 million acres) of Louisiana's agricultural land is foreign (non-US) owned…[;]
>
> (2)   the Census Bureau reports that around 33 percent of Louisiana homes are not owner occupied…[; and]
>
> (3)   many commercial properties in Louisiana are owned by non-Louisiana entities.

(Rec. Doc. 92 at p. 14, n. 4). Citing multiple circuit court decisions, Defendants argue that property ownership is insufficient to demonstrate citizenship. (*Id.* at pp. 12–13) (citing *Mondragon v. Capital One Auto. Fin.*, 736 F.3d 880, 884 (9th Cir. 2013); *In re Sprint Nextel Corp.*, 593 F.3d 669, 673–76 (7th Cir. 2010); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1165–66 (11th Cir. 2006)).

Plaintiffs refute the relevance of Defendants' proffered data points. Specifically, Plaintiffs point out that Louisiana "spans 33 million acres," such that foreign ownership of

5% of that land by non-Louisiana citizens does not foreclose ample Louisiana citizenship within the putative class. Plaintiffs also cite 2022 census data showing that "Louisiana's farmland is comprised of [25,000] individual farms and ranches; of those, 93% are family owned and operated." (Rec. Doc. 105 at p. 7, n. 28). Examining Defendants' proffered rate of homeowner occupation, Plaintiffs cite the specific rates of St. Bernard Parish (70.1%), St. Martin Parish (78.9%), and St. Mary Parish (68.1%) between 2019 and 2023, noting that these parishes are the only ones referenced in the Amended Complaint. (*Id.* at p. 8). Finally, Plaintiffs point out that in *Mondragon* and *Sprint*, cited by Defendants, the appellate courts considered the import of ownership of moveable property, rather than that of immovable property, upon which Plaintiffs base their citizenship argument. (*Id.* at p. 7).

Where remand is urged on the basis of the local controversy exception, the movant bears the burden of demonstrating that the exception applies. *Cheapside*, 94 F.4th at 497 (citing *Opelousas Gen. Hosp. Auth. v. Fairpay Solutions, Inc.*, 655 F.3d 358, 360 (5th Cir. 2011)). The movant must demonstrate the application of the exception by a preponderance of the evidence. *State of Louisiana v. 13 Verticals Inc.*, 81 F.4th 483, 490 (5th Cir. 2023). "[C]ourts addressing the question recognize that the exception is intended to be narrow, 'with all doubts resolved in favor or exercising jurisdiction over the case.'" *Opelousas Gen. Hosp. Auth.*, *supra*.

Taking Plaintiffs' cited evidence on this issue as true for these purposes, this Court does not find that it meets the preponderance of the evidence threshold. The undersigned agrees that foreign ownership of 5% of all Louisiana lands by non-citizens does not foreclose a 75% Louisiana citizenship finding in the putative class. However, Plaintiffs' cited statistics regarding owner-occupied homes in relevant parishes fails to show a likelihood of Louisiana citizenship, since only St. Martin Parish features a homeowner occupancy at or above 75%.

17

Similarly, assuming that the assertion that "many commercial properties in Louisiana are owned by non-Louisiana entities" is true, Plaintiffs offer no analysis of this data in relevant parishes. Moreover, in defining the putative class as those who own property in Louisiana, any presumption that may otherwise be available as to the citizenship of homeowners is rendered inapplicable. *HMB Interests, LLC v. Chesapeake La., L.P.*, 2010 WL 3604008 (W.D. La. Sept. 7, 2010).

Jurisprudence considering the sufficiency of evidence presented in support of the local controversy exception's two-thirds citizenship requirement instructs that Plaintiffs were required to offer affirmative evidence of the citizenship of the property owners included within the putative class. Plaintiffs offer no such evidence.

**B.    *Significant Basis***

Section 1332(d)(4)(A)(i)(II)(bb) requires that a plaintiff urging application of the local controversy exception to CAFA must show that the non-diverse defendant's "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class."

> This statutory provision 'relates to the alleged conduct of the local defendant, on one hand, to all the claims asserted in the action, on the other…[I]t requires the alleged conduct to form a significant basis of all the claims asserted.' A plaintiff need not provide a 'definitive analysis of the measure of damages caused by each defendant,' but must provide 'detailed allegations…[concerning] the local defendant's conduct in relation to the out-of-state defendants.' The allegations must show whether the local defendant 'played a significant role in the alleged [harm], as opposed to a lesser role, or even a minimal role.'

*Robert J. Caluda, APLC v. City of New Orleans*, 403 F. Supp. 3d 522, 539–40 (E.D. La. 2019) (internal citations omitted*).*

Plaintiffs cite *Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, 367 F. Supp. 3d 555, 565 (E.D. La. 2019), and *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364 (E.D. La. 2007), as authority for a finding of significant basis even where a local defendant is alleged

to have committed wrongs smaller in scope compared to those of other "primary" defendants, but such alleged wrongs are deemed "something more than 'insignificant.'" (Rec. Doc. 105 at p. 9) (quoting *Caruso*, 469 F. Supp. 2d at 369)).

Plaintiffs' Complaint offers no analysis of the scope or volume of harms alleged to have been committed by the Lumen defendants as compared with that of any other named Defendant. Instead, Plaintiffs assert that because all questions of fact and causes of action are asserted as against the Lumen defendants, the Court must find that the alleged conduct of these local defendants is a significant basis of Plaintiffs' claims. (*Id.*).

Plaintiffs' Complaint and briefs are lacking in any meaningful comparison of the alleged conduct of the Lumen defendants, such that this Court is not able to recommend a finding of substantial basis as to these local defendants. Plaintiffs fail to meet the burden allocated to them under this element of the local controversy exception.

## C.    *Significant Relief*

Section 1332(d)(4)(A)(i)(II)(aa) requires that a plaintiff demonstrate that a proposed plaintiff class seeks "significant relief" from a local defendant. The significant relief element is satisfied where "the relief sought from [the local] defendant constitutes a significant portion of the entire relief sought by the class." *Caluda*, 403 F. Supp. 3d at 538 (citing *Eckerle v. Northup Grumman Ship Sys., Inc.*, 2010 WL 2651637, at *2 (E.D. La. June 25, 2010)). The ability of the local defendant to pay any eventual damages award is irrelevant to the significance of the relief sought. *13 Verticals, Inc.*, 81 F.4th at 493.

No bright line test exists to sort relief sought from a local defendant into "significant" and "insignificant" categories. Recent Fifth Circuit cases considering the question have deemed relief sought to be significant. In the most recent case, the Fifth Circuit found significant relief satisfied where the alleged harms occurred during a three-year period, during which the local defendant was "solely responsible" more than half of that duration.

*Id.* In another recent case, the Fifth Circuit again found significant relief sought where the plaintiffs alleged joint, several, and solidary liability as to all class members for all claims. *Dixon*, 2024 WL 125730 at *3.

In this case, Plaintiffs vaguely allege joint and several liability for damages resulting from a coordinated effort by Defendants to conceal the presence of lead-sheathed telecommunications cables and equipment, as well as the harms allegedly resulting from leaving these items in place, rather than removing them when new telecommunications cables were introduced. (Rec. Doc. 1-2 at ¶¶ 54–60, 62–120). Although this Court offers no prediction of the ultimate success of Plaintiffs' claims against the Lumen Defendants, it appears that, on the basis of the Complaint, Plaintiffs have satisfied the "significant relief" element of the local controversy exception.

### D.     *Location of Principal Injuries*

Section 1332(d)(4)(A)(i)(III) requires that a plaintiff demonstrate that the principal injuries alleged in the suit were incurred in the state where the action was first filed. Plaintiffs' Complaint alleges injuries to immovable property located in Louisiana and specifically omits any claims for personal injury. (Rec. Doc. 1-2 at pp. 1–2).

Defendants argue that, even though the Complaint confines alleged injuries to immovable property located in Louisiana, such pleading does not suffice to satisfy the local injury element of the local controversy exception. (Rec. Doc. 92 at pp. 10–11). Specifically, Defendants point out that the WALL STREET JOURNAL article quoted extensively in Plaintiffs' Complaint alleges a network of lead-sheathed telecommunications cables laid throughout the country, foreclosing a finding that the "principal injuries" occurred in Louisiana.

In *Cheapside Minerals*, the Fifth Circuit addressed the meaning of the principal injuries prong of the local controversy exception, holding that because that statute does not include the same permissive language of the "mass action" provisions found at Section

1332(d)(11)(B)(i), Congress "intended to require that all plaintiffs sustain their principal injuries in forum state and nowhere else." 94 F.4th at 501. This Court agrees that, as explained in *Arbuckle*, CAFA's local controversy exclusion is tailored to "a narrow category of truly localized controversies" providing "a statutory vehicle for the district courts to ferret out the controversy that uniquely affects a particular locality to the exclusion of all others." 810 F.3d at 337.

Plaintiff offers no counterargument in rebuttal to Defendants' observations about the presence of the alleged injuries throughout the country, relying instead on the limiting language in the Complaint defining the putative class as those persons who own immovable property located in Louisiana. Considering the express language of *Arbuckle* and *Cheapside Minerals*, this Court finds that Plaintiffs fail to satisfy this element of the local controversy exception.

### E.    *Prior Class Actions*

The final element of the local controversy exception requires that the plaintiff demonstrate that

> during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. 1332(d)(4)(A)(ii).

In this matter, the parties agree that during the three-year period preceding the filing of Plaintiffs' putative class action, other class action suits were filed against Defendants alleging the same conduct forming the basis of the instant suit. (Rec. Doc. 92 at pp. 12–13; Rec. Doc. 105 at pp. 10–11). In *Tiger v. Verizon Commc'ns, Inc.*, No. 2:23-CV-1618 (W.D. Pa.), and *Bostard v. Verizon Commc'ns, Inc.*, No. 1:23-CV-8564 (D.N.J.), former telecommunications workers alleged personal injuries resulting from lead exposure. In *In re:*

*Lumen Techs., Inc. Secs. Litig. I* and *II*, Nos. 3:23-CV-0286 (W.D. La.) and 3:23-CV-1290 (W.D. La.), and *Gen. Ret. Sys. v. Verizon Commc'ns, Inc.*, No. 1:23-CV-5218 (D.N.J.), shareholders asserted claims for violation of federal securities law based on the impact of Defendants' alleged conduct on stock valuation.  As observed by Defendants, all of these prior suits quoted extensively from the WALL STREET JOURNAL article cited in Plaintiffs' Complaint.  The parties disagree as to whether these suits satisfy the prior class action element of the local controversy exception since these prior suits asserted different causes of action from Plaintiffs' claims in this suit.

A February 28, 2005 report of the Senate Judiciary Committee providing analysis of CAFA during its consideration instructs that, as regards this element of the local controversy exception,

> the inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed.  The inquiry is whether similar factual allegations have been made against the defendant in multiple class action, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects).

S. Rep. 109-14, 2005 WL 627977 at *41, 2005 U.S.C.C.A.N. 3.    Plaintiffs offer no rebuttal to the cases cited by Defendants applying the prior class action element according to this legislative history.  (Rec. Doc. 92 at p. 12; Rec. Doc. 105 at pp. 10–11).  Considering the foregoing, this Court finds that *In re: Lumen Techs. Inc. Secs. Litig. I* and *II*, as well as *Gen. Ret. Sys. v. Verizon Commc'ns Inc.* included "similar factual allegations" against Defendants. That these suits asserted these facts in support of claims under differing theories of liability is not relevant to the prior class actions element of the CAFA local controversy exception analysis.

As explained in the preceding sections, this Court finds that Plaintiffs fail to satisfy their burden of demonstrating the requisite elements of citizenship, significant basis, location

of injury, and prior class actions. Accordingly, the undersigned will recommend that the Court find Plaintiffs fail to show that the local controversy exception to CAFA applies to this putative class action. For this reason, even if this suit were not otherwise removable pursuant to Section 1332(a), this Court would still conclude the instant suit was properly removed pursuant to Section 1332(d)(2)(A).

## III.    *Federal Officer Removal*

Pursuant to 28 U.S.C. § 1442(a)(1), a party may remove an action against "any officer (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." The phrase "acting under" is "broad, and…the statute must be 'liberally construed.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

> [T]he statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t] and bring 'to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting…within the scope of their authority.'

*Watson*, 551 U.S. at 150 (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)) (internal quotation marks omitted). While a defense is generally not a means to bring an otherwise unremovable case within the subject matter jurisdiction of federal district courts, Section 1442(a) expressly provides this jurisdictional mechanism. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020). The defense must be raised in the defendant's notice of removal. *Id.* (citing *Mesa v. California*, 489 U.S. 121, 136 (1989)). A defendant removing under Section 1442 must demonstrate the following:

(1)    that it is a "person" within the meaning of the statute;
(2)    that it asserts a "colorable federal defense;"
(3)    that it has acted "pursuant to a federal officer's directions;" and

23

> (4)    that the charged conduct is "connected or associated with an act pursuant to a federal officer's directions."

*Caris MPI, Inc. v. UnitedHealthcare, Inc.,* 108 F4th 340, 346 (5th Cir. 2024) (citing *Latiolais, supra,* at 296).

Defendants' Notice of Removal cites federal officer removal pursuant to Section 1442(a) as one of the bases for removal. (Rec. Doc. 1 at ¶¶ 17–22). The notice also fairly identifies the federal contractor defense as the specific basis for federal officer removal. (*Id.*). Finding that the defense was properly raised in Defendants' notice, this Court turns to the four-part analysis required under the statute.

AT&T, Verizon, and the Lumen defendants are corporate entities and, while not "natural persons," are "persons" within the meaning of Section 1442(a). *Watson, supra,* at 152–3. Plaintiffs do not dispute that Defendants satisfy this first element.

Next, this Court considers whether Defendants assert a "colorable federal defense." A "colorable federal defense" does not require that the defendant "win his case before he can have it removed." *Id.* at 296 (quoting *Jefferson Cty., v. Acker,* 527 U.S. 423, 431 (1999)). A federal defense is colorable "unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Latiolas,* 951 F.3d at 297 (quoting *Zeringue v. Crane Co.,* 846 F.3d 785, 791 (5th Cir. 2017) (internal citations omitted).

The federal contractor defense

> extends to federal contractors an immunity enjoyed by the federal government in the performance of discretionary functions. Federal contractors are not liable for design defects if '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.'

*Id.* (quoting *Zeringue,* 846 F.3d at 790).

The Notice of Removal contains the following allegation:

> Prior to 1965, Department of Defense specifications required the use of lead sheathing on telecommunications cables and detailed the required purity, thickness, and diameter of the lead sheathing for such cables. Pursuant to a 1937 nationwide agreement between the American Telephone and Telegraph Company and the War Department, AT&T installed trunk line facilities to connect all military facilities and provided additional specialized services for installation, alteration and repair of Department of Defense owned telephone systems. For example, in 1942, the U.S. Army requested that the American Telephone & Telegraphy Company install extensions of the Army Full Period Telephone Network in Louisiana between Baton Rouge and New Orleans, and between New Orleans and Alexandria.

(Rec. Doc. 1 at ¶ 21).

In support of its federal contractor defense, Defendants point to evidence of the contractual relationship between AT&T and the United States government. (Rec. Doc. 92 at pp. 27–33). In particular, Defendants offer the Declaration of Jonathan R. Winkler, Ph.D., a history professor and author of the book *Nexus: Strategic Communications and American Security in World War I* (Harvard Univ. Press, 2008), as well as several scholarly articles concerning communications technology and national defense. (Rec. Doc. 100-9 at ¶ 1). Winkler explains that, prior to 1937, "the United States armed services had drawn up separate agreements between particular telephone companies and the armed forces for service to a post." (*Id.* at ¶ 6). Beginning in 1937, the War Department created a standard master agreement with AT&T and "various local Bell companies…that would serve to define the general policy covering subsequent agreements between the Army and each…Bell System company." (*Id.* at ¶ 6). Winkler declares that, pursuant to these agreements, the United States government contracted for installation of telecommunications cables according to its "clearly defined specifications" which called for "lead-covered phone cable." Winkler's declaration cites an example of one such specification, MIL-C-10993A, relating to WC-251 and WC-253 cables, which are identified as "lead-covered and armored."

25

(*Id.* at ¶¶ 9–10). Winkler also cites the 1945 War Department Technical Manual TM11-486, in which the Army advised that lead-covered cables are to be used when possible. (*Id.* at ¶ 14). Winkler explains that the United States Navy also imposed such specifications. (*Id.* at ¶ 17–18). Specifically addressing the Navy's installation of such cables in Louisiana, Winkler cites joint military specifications of the Army and Navy for lead-covered cable, which would have been applicable when the telecommunications system at Naval Air Station Houma was installed. (*Id.* at ¶¶ 21–22). Similarly, Winkler notes that Naval Auxiliary Air Station New Iberia was constructed between 1958 and 1960. (*Id.* at ¶ 23). Winkler cites documents from 1958 showing that plans for the Optical Landing System at NAS New Iberia included lead-covered telephone cable to be supplied by the United States government. (*Id.* at ¶ 35). Although "specific written contracts for installation of lead-covered cable and provision of service at either NAAS New Iberia or NAS Houma are not yet located," Winkler concludes that (1) no construction of telecommunications systems at these facilities would have occurred outside of a written contract; (2) the Navy would have directed the use of lead-covered cables in these projects because of its capacity and its interoperability with surrounding telecommunications systems; and (3) "it is likely that Southern Bell installed cables at NAAS New Iberia, as it had at NAS Houma, as a contractor for the United States Navy…under the encompassing master agreement of 1950." (*Id.* at ¶¶ 40–41).

Plaintiffs' claims in this suit are for damage to immovable property allegedly caused by the continued presence of lead-sheathed telecommunications cables and related lead telecommunications equipment on such property. (Rec. Doc. 1-2 at ¶¶ 10–21). The putative class is defined as

> [a]ll natural and juridical persons (excluding any state agencies or commissions, and excluding the U.S. federal government and any agencies or departments thereof) who own immovable property in Louisiana that has been damaged by Defendants' lead-covered telephone cables and associated lead equipment.

26

(Rec. Doc. 1-2 at ¶ 2).

According to Winkler's Declaration, NAS Houma was deactivated in October 1947 and ownership of this facility was transferred to the Parish of Terrebonne and City of Houma. Following the establishment of Air Force Station Houma at a portion of the airport in December 1955, Southern Bell acquired ownership of the telephone plant, including the lead-covered cables, in 1959 from the Houma-Terrebonne Airport Commission and the City of Houma. (Rec. Doc. 100-9 at ¶ 22). Similarly, NAAS New Iberia was decommissioned in January of 1965 and subsequently acquired by the Iberia Parish Police Jury. (*Id.* at ¶ 23). Accordingly, NAS Houma is now owned by the Houma-Terrebonne Airport Commission, and, as to its telephone plant, one or more named defendant in this case. NAAS New Iberia is owned by the Iberia Parish Police Jury, a juridical person under Louisiana law. *Police Jury of La Salle Parish v. Police Jury of Catahoula Parish*, 83 So. 250 (La. 1917). Defendants allege, and Plaintiffs do not dispute, that the current owners of these former military installations are putative class members. (Rec. Doc. 92 at p. 26).

Defendants have offered sufficient evidence tending to show that the United States government imposed "reasonably precise specifications" pertaining to the construction of telecommunications systems at NAAS New Iberia and NAS Houma and that lead-covered telecommunications cables were installed at those locations pursuant to those specifications. Defendants aver that the government knew at least as much as AT&T did, if not more, about the dangers presented by lead exposure. (Rec. Doc. 92 at p. 37) (citing U.S. Dep't of Labor Bureau of Labor Statistics Bulletin No. 426, *Deaths from Lead Poisoning*, February 1927, Rec. Doc. 97-1). Based on Defendants' proffered evidence, this Court deems Defendants' federal contractor defense "colorable" for purposes of its federal officer removal analysis.

Turning to the final element of federal officer removal, Plaintiffs argue that, even if evidence does show that lead-sheathed telecommunications cables were installed at NAS Houma and NAAS New Iberia under the government's direction, the conduct at issue in this case—Defendants' decision to leave these cables and associated equipment in place, rather than removing them, once newer, non-lead cables and equipment were put into service—was not the result of government direction.  (Rec. Doc. 105 at p. 13).  Plaintiffs cite *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016), and *Bartel v. Alcoa S.S. Co.*, 64 F. Supp. 3d 843 (M.D. La. 2014), as authority requiring that Defendants show a "causal nexus" between the government-directed acts and Plaintiffs' claims.  (Rec. Doc. 105 at pp. 14–15).

In *Latiolais v. Huntington Ingalls*, Inc., the Fifth Circuit addressed the requisite showing under the fourth element of federal officer removal following the Removal Clarification Act of 2011, Pub. L. 112-51, 11/9/2011, 125 Stat. 545.  951 F.3d 286 (5th Cir. 2020).  In that case, the Fifth Circuit granted rehearing and acknowledged that jurisprudence on the issue was confusing.  *Id.* at 289.  Examining the language of Section 1442, the appellate court found that the 2011 amendment changing Section 1442(a)(1)'s requirement that a removable suit be "for any act" under color of federal office to "for or relating to any act" under color of federal office was an expansion of the scope of removable suits under the statute.  *Id.* at 291.  Considering this expansion, the Fifth Circuit deemed its prior "causal nexus" standard—requiring that a plaintiff show direct causation as to an act under color of federal office—must give way to the more permissive standard requiring a plaintiff to show only connection or association with acts under color of federal office.  *Id.* at 296.  Based on the Fifth Circuit's express rejection of its prior causal nexus standard, the undersigned does not agree with Plaintiffs' position that Defendants must show that their decisions not to remove the lead-covered cables and associated equipment are not sufficiently related to or associated with the installation of these items under government direction and specifications for

28

purposes of federal officer removal.  Defendants have, to this Court's satisfaction, established removability under Section 1442(a)(1).  Accordingly, were this Court to have found that it lacked subject matter jurisdiction based on diversity under Section 1332(a), the undersigned would nevertheless recommend that remand be denied.

## IV.    *Derivative Sovereign Immunity*

In their opposition to Plaintiffs' motion, Defendants raise for the first time the additional federal defense of derivative sovereign immunity.  (Rec. Doc. 92 at pp. 34–36).  As this federal defense, presented as a "colorable federal defense" for purposes of federal officer removal under Section 1442(a)(1), was not included within Defendants' original or supplemental Notice of Removal, it has not been properly raised as a basis for removal.  *Allen v. Bank of America, N.A.*, 5 F. Supp. 3d 819, 834 (N.D. Tex. 2014) (an additional basis for removal jurisdiction is not properly raised outside of a timely notice of removal).  This Court does not reach the role of Defendants' derivative sovereign immunity defense in future proceedings before the Court, but merely finds that it is not properly considered for removal purposes under 28 U.S.C. § 1446.  Considering findings of subject matter jurisdiction based on diversity pursuant to Section 1332(a) and CAFA pursuant to Section 1332(d), as well as federal officer removal jurisdiction based on Defendants colorable federal contractor defense Section 1442(a)(1), this finding does not change this Court's ultimate determination as to the pending motion.

## <u>Conclusion</u>

For the reasons discussed herein, the Court recommends that the MOTION FOR REMAND filed by Plaintiffs Gary Blum and Lucia Billiot (Rec. Doc. 74) be DENIED, preserving all claims by Plaintiffs for further proceedings before the Court.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and

recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

**THUS DONE** in Chambers, Lafayette, Louisiana on this 12th day of September, 2025.

**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**